IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ALEA BLAKE COOPER        )
                                   )
v.                             )     No. 2:20-0036
                                   )
KILOLO KIJAKAZI[1]          )
Commissioner of Social Security   )

**To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge**

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 22), to which Defendant has filed a response. (Docket No. 24.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 22) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

# I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on September 11, 2017. (*See* Transcript of the Administrative Record (Docket No. 18) at 244-45).[2] She alleged that she was unable to work, as of the alleged disability onset date of September 11, 2017,[3] because of a brain tumor, psoriatic arthritis, anxiety, a back disorder, anemia, posttraumatic stress disorder ("PTSD"), bipolar disorder, and depression. (AR 286.) The applications were denied initially and upon reconsideration. (AR 244-45, 280-81.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Todd Spangler on March 15, 2019. (AR 36.) The ALJ denied the claim on May 15, 2019. (AR 15-17.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 28, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since September 28, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: psoriatic arthritis, depression, anxiety, and neurodevelopment disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

[3] Plaintiff later amended her alleged onset date to September 28, 2017. (AR 21.)

in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform frequent climbing of ramps and stairs, ladders, ropes, and scaffolds; and can perform frequent balancing, stooping, kneeling, crouching and crawling. The claimant must avoid concentrated exposure to extreme cold. The claimant can perform simple and low level detailed tasks, can have no more than occasional public contact, and can adapt to changes introduced gradually and infrequently.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 21, 1985 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 28, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 21-28.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

#### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically

4

determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform light work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 21-28.)

### C. Plaintiff's Assertions of Error

Plaintiff presents four assertions of error: (1) that the ALJ failed to properly evaluate Plaintiff's subjective statements; (2) that the ALJ failed to properly assess Plaintiff's functional capacity; (3) that the ALJ erred in his evaluation of the opinion of Dr. Eric Lisic; and (4) that the ALJ failed to consider whether Plaintiff could perform the activities identified in the RFC on a regular and continuous basis. (Docket No. 23 at 8.) Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded, or, alternatively, reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id.* at 18.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

### 1. Plaintiff's Subjective Statements.

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of such symptoms were "not entirely consistent" with the evidence contained in the administrative record. (AR 24.) Plaintiff

argues that in so finding, the ALJ selectively and improperly emphasized medical records that indicated an improvement in her condition at the expense of evidence suggesting that she continues to experience pain at a level that is consistent with her allegations.

Plaintiff's argument is rooted in Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). This evaluation is based on seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).

The precursor to SSR 16-3p, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). Although the Commissioner removed any reference to the term "credibility" in SSR 16-3p, there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Reviewing courts thus still accord "great weight and deference" to an ALJ's determination regarding the consistency of

7

a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), and claimants seeking to overturn the ALJ's decision continue to "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

The ALJ provided the following justification for discounting Plaintiff's allegations as to the severity of her physical symptoms:

> Despite the claimant's reported pain from her arthritis, the claimant reported that overall, her pain management was at goal (8F/12). Moreover, during the claimant's hospitalization for her mental impairments, the claimant reported pain in her legs and feet, but reported having ibuprofen for her pain (7F/31). The objective imaging was also normal with x-ray of the cervical spine from March 9, 2018 finding normal cervical spine alignment and no abnormalities (12F/22). Ultrasound results of the left lower extremity were also negative (12F/25). X-rays of the feet, hands, and sacroiliac joints were also normal (15F/11). Notably, lab testing also found no elevations of inflammation [markers] and negative rheumatoid serology (15F/4). Although examinations were positive for tenderness, overall examinations were otherwise normal with findings of normal gait and ambulation, normal motor strength and tone, normal movement of all extremities, and no edema (8F/8, 13; 12F/8, 12, 20; 14F/11, 17, 31; 15F/4, 8; 17F/9, 18F/5, 10; 20F/7; 23F/4; 26F/4, 11). An examination on December 3, 2018 also noted that the claimant had a hunched posture but had no real pain over the back facets or joints, and 5/5 strength of the extremities with exaggerated gait issues (21F/3). The claimant also reported that she had been reducing her pain medications to 2-4 tablets depending on the days [sic] (12F/7). The claimant also reported that her medications were helpful and helping her to "function and go about daily life" (12F/19).

(AR 24.) Plaintiff dedicates many pages of her brief to explaining generally that a claimant's symptoms may "wax and wane depending on the nature of the disability," and that an ALJ must base his credibility determination on an analysis of the entire record. (Docket No. 23 at 9-12.) Notably absent from Plaintiff's brief, however, is any discussion of specific evidence that undermines the ALJ's findings or demonstrates the ongoing severity of her condition. Plaintiff also fails to dispute any of the findings quoted above, which is normally fatal to a credibility challenge given the lenient standard imposed on the ALJ. *See Casey v. Sec'y of Health & Human*

*Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) ("[The ALJ's] conclusions with respect to credibility should not be discarded lightly and should be accorded deference.").

Notwithstanding such deference, the Court acknowledges certain flaws in the ALJ's reasoning. First, the ALJ's finding that Plaintiff's pain management is "at goal" is a reference to an office visit on December 13, 2017, during which the attending physician noted that Plaintiff's pain had "slightly increased over [the] last few months." (AR 799.) The trend continued following this visit, with Plaintiff reporting increased neck pain, muscular spasms, and general pain symptoms "which can wake her at night" in February and March of 2018. (AR 877, 881, 942.) She was ultimately referred to a rheumatologist in January 2018 based on the presence of "significant" arthritic pain, which Plaintiff continued to report thereafter. (AR 890-91, 938, 943, 952.) In March 2018, Plaintiff stated that she had experienced no improvement in her overall pain. (AR 1034.) And in April 2018, a treating provider recommended follow up with a specialist to consider immunotherapy in light of Plaintiff's "still elevated" pain. (AR 932-33.) In light of such subsequent reports, it is unclear how an ambiguous statement regarding pain management shortly after the alleged onset date demonstrates inconsistency in Plaintiff's allegations.

The ALJ's reliance on a notation from a mental health visit in October 2017 indicating that Plaintiff took ibuprofen for leg and foot pain is similarly questionable. A treating physician started Plaintiff on oxycodone and referred her to a pain specialist due to ongoing joint pain the very next month. (AR 795.) On March 13, 2018, her treating provider instructed her to stop taking ibuprofen in lieu of prescription anti-inflammatory medication. (AR 1039.) As noted above, Plaintiff also progressively reported increases in pain after October 2017. (AR 1038, 1128, 1140-41, 1358-59.) A fleeting statement about over-the-counter pain medication made during a mental status examination thus does little to discredit Plaintiff's allegations of disabling pain.

9

Nonetheless, the ALJ appropriately cited imaging studies of Plaintiff's spine, upper extremities, and lower extremities, all of which were unremarkable. (AR 892-95, 1041.) Plaintiff downplays these normal objective findings by emphasizing the ALJ's failure to discuss her purported diagnosis of fibromyalgia, a condition for which objective testing is generally "of little relevance" in determining the severity of the subject claimant's symptoms. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011). However, it is far from clear that Plaintiff actually suffers from fibromyalgia. In March 2018, a provider noted that Plaintiff exhibited "features of fibromyalgia," but concluded that further testing was necessary before establishing a diagnosis in light of her prior diagnoses of psoriatic and rheumatoid arthritis. (AR 1038.) During a subsequent visit in May 2018, the same provider documented just six out of 18 positive tender points (AR 1034), which is well short of the 11 needed to establish a diagnosis. *See* SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012); *see also Partlow v. Comm'r of Soc. Sec.*, No. 2:18-CV-1702, 2019 WL 5257541, at *3 (S.D. Ohio Oct. 17, 2019), *report and recommendation adopted*, 2020 WL 247336 (S.D. Ohio Jan. 16, 2020) (noting that fibromyalgia represents medically determinable impairment only if the claimant "show[s] eleven out of eighteen positive tender points on physical exam or repeated manifestation of six or more fibromyalgia symptoms, signs, or co-occurring conditions"). It does not appear that Plaintiff was tested at any other time by any provider. And as discussed below, Plaintiff's treating physician, Dr. Eric Lisic, did not include fibromyalgia as a diagnosis or cause of any of the symptoms that allegedly render her disabled. (AR 1347.) *Cf. Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244-49 (6th Cir. 2007) (finding that ALJ erred in credibility assessment in part by ignoring office notes from treating physicians "replete with references to observed tender points in the classic fibromyalgia distribution").

10

Instead, Dr. Lisic opined that Plaintiff should be "considered for disability" based on "rheumatoid arthritis and/or psoriatic arthritis" (AR 1347), an assessment that the ALJ specifically addressed by highlighting another treating provider's notation regarding the absence of any inflammation markers and negative rheumatoid serology. (AR 1034.) The ALJ also appropriately referenced a treating provider's suggestion that Plaintiff was "probably exaggerate[ing]" her alleged gait issues (AR 1240), which provides additional support for the ALJ's decision. *See Powell v. Colvin*, No. 5:12-cv-0157, 2014 WL 689721, at *6 (W.D. Ky. Feb. 20, 2014) ("Tendency to exaggerate is a legitimate factor in determining credibility.") (citing *Tonapetyan v. Commissioner,* 242 F.3d 1144, 1148 (9th Cir. 2001)). Plaintiff does not dispute such reasoning in her brief, let alone carry her burden of demonstrating that the ALJ's discussion is not supported by substantial evidence. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). She instead broadly accuses the ALJ of "cherry picking" the evidence of record (Docket No. 23 at 11-12) without identifying any countervailing evidence that might undermine the ALJ's conclusion, which further weighs against a finding of reversible error. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir.2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Finally, the ALJ bolstered his credibility determination by highlighting the absence of evidence to support her allegations regarding the severity of her mental impairments. (AR 25.) The ALJ discussed documented improvement in anxiety and depression, as well as normal mental status examination findings pertaining to judgment, insight, mood, effect, memory, thought content, and concentration. (AR 25.) Plaintiff does not address any of this discussion in her brief,

which effectively dooms her assertion of error. *See McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011) (arguments not raised or addressed in a perfunctory manner may be deemed waived).

While the ALJ's discussion of his finding that Plaintiff's allegations were somewhat inconsistent with the evidence of record is not without defects, it overall provides an adequate basis to support an adverse credibility finding. As such, the Court concludes that the ALJ's determination was "reasonable and supported by substantial evidence," *Rogers*, 486 F.3d 234, 249 (6th Cir. 2007), and finds that Plaintiff has failed to demonstrate the necessity of reversing the ALJ's "essentially unchallengeable" credibility determination. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). This assertion of error is therefore rejected.

### 2. RFC.

Plaintiff next asserts that the ALJ improperly concluded that she is able to perform light work as part of the RFC formulation. Plaintiff argues that the ALJ violated Social Security Ruling ("SSR") 96-8p, which requires the ALJ to provide a "narrative discussion" of the evidence used to support his conclusions, 1996 WL 374184, at *7 (July 2, 1996), by failing to reference "any specific evidence" or "persuasive non-medical facts" to support the RFC determination. (Docket No. 23 at 14.)

Plaintiff's argument is unpersuasive. First, she entirely disregards the ALJ's discussion of the opinions provided by two state agency medical consultants—Drs. Thomas Thrush and Reeta Misra—which form the basis of the ALJ's determination that Plaintiff can perform light work. After noting that both opinions restricted Plaintiff to "light exertion" and other postural limitations, the ALJ described the opinions as "persuasive" based on their consistency with the overall medical evidence. (AR 25.) Contrary to Plaintiff's assertion otherwise, the ALJ recited specific objective

evidence that included normal x-rays, ultrasounds, and other lab testing, the absence of any inflammation markers, negative rheumatoid serology, and normal examination findings with respect to Plaintiff's gait, ambulation, motor strength, tone, and movement of extremities. (AR 25.) Such discussions represent substantial evidence in support of the RFC determination, and therefore preclude a finding of reversible error. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 750-51 (6th Cir. 2011) ("If the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether a court might have resolved the disputed issues differently in the first instance.") (internal citations omitted).

Second, Plaintiff offers no evidence to suggest that she is unable to perform work within the parameters of the assigned RFC, as is her burden. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) ("The burden lies with the claimant to prove that she is disabled.") (citing *Casey*, 987 F.2d 1233). She instead cites a single notation from a March 2018 visit during which a provider documented "[t]ender points present numbering 6 of 18" (AR 1034), a finding that does nothing to advance her argument, and misconstrues a Sixth Circuit opinion concluding that an ALJ failed to provide good reasons for rejecting the opinion of a treating provider pursuant to a regulation that is inapplicable to the instant analysis. *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 441 (6th Cir. 2018) ("Merely listing alternative medical opinions—none of which were ultimately adopted—does not elucidate the ALJ's reasons for discounting [the treating cardiologist's] opinion.").[4] Because Plaintiff offers nothing to refute the ALJ's findings, this assertion of error is rejected.

---

[4] The regulation at issue in that opinion is 20 C.F.R. § 404.1527, which applies only to applications filed before March 27, 2017.

### 3. The Opinion of Dr. Eric Lisic.

Plaintiff's third assertion of error involves the ALJ's analysis of the "opinion" provided by Plaintiff's treating physician, Dr. Eric Lisic. This "opinion" consists of two letters from Dr. Lisic, the first of which was authored on January 12, 2018, and states only that Plaintiff "is being treated for a variety of medical conditions," and that "she is disabled." (AR 906.) The second letter, written on March 13, 2019, is somewhat more detailed in that it identifies actual medical diagnoses—rheumatoid arthritis, psoriatic arthritis, and bipolar disorder—and states that Plaintiff suffers from chronic pain, difficulty in social interactions, and "neuropathy symptoms." (AR 1347.) Plaintiff claims that the ALJ improperly failed to assign weight to Dr. Lisic's opinion, and that the ALJ failed to discuss any of the factors required for consideration of a medical opinion pursuant to 20 C.F.R. § 404.1520c. (Docket No. 23 at 15-16.)

Plaintiff's first claim is easily rejected. For all applications filed on or after March 27, 2017, the ALJ is not required to accord any particular weight to the opinion of a provider. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources."). Because Plaintiff's applications were filed in September 2017, there is no error in the ALJ's failure to assign a specific amount of weight to Dr. Lisic's opinion.

Regarding Plaintiff's second claim, it is true that the ALJ is directed to consider the "persuasiveness" of the medical opinions based on five categories—supportability, consistency, relationship with the claimant, specialization, and "other factors" such as the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"—the two most important of which are supportability and consistency. *Id.* § 404.1520c(a)-(c). However, in concluding that Dr. Lisic's opinion was "not

persuasive," the ALJ in fact discussed how Dr. Lisic's statements were not supported by or consistent with specific physical findings relating to Plaintiff's ambulation, gait, motor strength, tone, and range of motion. (AR 26.) Plaintiff points to no evidence to contradict this finding, which is her burden on appeal. *See Dennis v. Soc. Sec. Admin.*, No. 3:14-1537, 2015 WL 5511478, at *9 (M.D. Tenn. Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 5836044 (M.D. Tenn. Oct. 6, 2015) ("It is the claimant's burden to prove by sufficient evidence [her] disability[.]"). The Court therefore finds that substantial evidence supports the ALJ's finding.

Finally, Defendant correctly notes that Dr. Lisic's conclusory statements regarding Plaintiff's condition do not constitute a medical opinion subject to consideration by an ALJ. A medical opinion is a statement from a medical source "about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" with respect to certain delineated abilities. 20 C.F.R. § 404.1513(a)(2). Such criteria underscore the importance of providing a detailed opinion concerning a claimant's ability to perform work-related tasks; the fact that a claimant suffers from multiple conditions and accompanying symptoms is not sufficient to establish the existence of a disabling condition, as the claimant is also required to prove the "severity and functional impact" of such impairments. *Jones v. Comm'r of Soc. Sec.*, No. 13-cv-14217, 2015 WL 1004681, at *8 (E.D. Mich. Mar. 6, 2015) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)).

Here, Dr. Lisic's letters contain no insight as to the severity of any limitations allegedly caused by Plaintiff's conditions. The letters do not permit reasonable inferences to be drawn regarding what physical or mental work-related activities, if any, would be affected by her alleged ailments. Therefore, even if the ALJ erred by declining to provide a robust analysis of Dr. Lisic's statements, the letters represent "weak evidence at best" that cannot justify a finding of reversible

15

error. *See Hernandez,* 644 F. App'x at 474-75 (holding that an ALJ's failure to give controlling weight to a provider's "rudimentary indications that lack an accompanying explanation" represents harmless error). For all of these reasons, the Court rejects this assertion of error.

### 4. Mental Residual Functional Capacity.

As with her second assertion of error, Plaintiff invokes SSR 96-8p to argue that the ALJ failed to consider whether she would be able to perform work-related activities "on a regular and continuing basis," which amounts to "8 hours a day, for 5 days a week[.]" 1996 WL 374184, at *2. Plaintiff contends that her mental limitations—namely her alleged memory deficits, poor attention and concentration, and racing thoughts—prevent her from working on a regular basis. (Docket No. 23 at 16-17.)

The Court is again unpersuaded by Plaintiff's cursory arguments. The ALJ's RFC formulation limits Plaintiff to simple and low-level detailed tasks, occasional public contact, and changes in the work environment that are introduced gradually and infrequently. (AR 23.) Plaintiff points to nothing in the record suggesting that more severe mental restrictions are warranted. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("[T]o prevail on appeal, [the claimant] must demonstrate that the ALJ's determination that [she] was not disabled is not supported by substantial evidence."). The only evidence identified anywhere in Plaintiff's brief regarding memory and concentration problems involves an office note from February 2, 2018, which states only that Plaintiff's "recent/remote memory" and "attention/concentration" were "impaired," and that she appeared "depressed, sad." (AR 859.) Such vague notations simply do not provide a sufficient basis to overturn the ALJ's RFC findings. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations

imposed by a condition, not the mere diagnosis of it.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).

Moreover, medical notes from the same period consistently document mild psychiatric findings, including normal recent and remote memory. (AR 877-78, 881, 890.) With respect to alleged concentration deficits, Dr. Lisic opined that Plaintiff's attention deficit hyperactivity disorder was "potentially mis-diagnosed," which warranted "weaning" of the medication prescribed to treat it. (AR 890.) In April 2018, Dr. Lisic noted improvement in Plaintiff's depression with the use of prescription medication. (AR 877-78.) The ALJ also cited records from Plaintiff's mental treatment documenting "good" memory and concentration, "normal" thought content, and an "organized" thought process. (AR 22, 669-71.) Such findings tend to bolster the ALJ's mental RFC findings and establish substantial evidence in support of his non-disability determination. Accordingly, the Court rejects this final assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion for judgment on the administrative record (Docket No. 22) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004)

(en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge